NAGEL, Respondent, v. SOUTH DAKOTA EMPLOYERS' PROTECTIVE ASSOCIATION, Appellant.

(228 N. W. 805.)

(File No. 6862. Opinion filed January 31, 1930.)

*Caldwell & Burns,* of Sioux Falls, for Appellant.
*Porter & Porter,* of Madison, for Respondent.

BROWN, P. J. Plaintiff's claim for compensation under the Workmen's Compensation Law was allowed by the Industrial Com-

missioner, and on appeal to the circuit court judgment was given allowing the claim, from which judgment and an order denying a new trial defendant appeals.

Plaintiff is a farmer, and had taken workmen's compensation insurance covering two of his workmen while engaged (a) in "ordinary farm labor" and (b) "in connection with farm machinery operated by the employer under contract, such as threshing, shredding, etc." Attached to the policy was a rider, insuring plaintiff himself, under the provisions of Laws 1923, chapter 210, "while engaged in the work or business set forth in said policy, against accidental injury, including death resulting therefrom, to the same amount as is provided by the South Dakota Workmen's Compensation Law to employees, and subject to the same restrictions and limitations." While traveling about the country for the purpose of buying hogs, plaintiff went over a barb-wire fence to interview a man with reference to where he could find hogs for sale. In crossing the fence he pressed down the top wire, and on its release it struck his thumb, causing the injury complained of. There is no controversy as-to the fact of injury or the amount of compensation awarded. The only question in dispute is whether or not the acts of the plaintiff which resulted in the injury were covered by the terms of the policy, and that depends on whether or not he was at the time of the injury "engaged in ordinary farm labor."

We do not think that traveling about the country looking for live stock to buy can properly be said to be "ordinary farm labor." The purchase of live stock involves the exercise of skill, judgment, and discretion that is not confided to the ordinary farm laborer. It is true that driving or hauling live stock to or from the farm where a laborer is engaged would be "ordinary farm labor," and the person doing such work would be engaged in "ordinary farm labor"; but the farmer occupied in looking for stock to purchase is not in any proper sense engaged in "ordinary farm labor." Plaintiff testified that when he went out and bought cattle and hogs he usually brought them home, and that had he procured any on the day he was injured he intended to take them home. But he also testified that some of the stock he bought he resold without bringing them home and that he bought none at all on the day of the injury. We are of the opinion that so long as he was only looking for stock to buy, he was not engaged in "ordinary farm labor."

The evidence is insufficient to sustain the finding of the Industrial Commissioner and the findings and judgment of the trial court, and the judgment and order appealed from are reversed.

POLLEY, SHERWOOD, and CAMPBELL, JJ., concur.

BURCH, J. (concurring specially). I concur in the result reached, but do not think the test to be applied in determining what is and what is not "ordinary farm labor" depends upon the want of skill, judgment, or discretion required in its performance. Much ordinary farm labor requires a great deal of skill, judgment, and discretion. I think the test is: Was the labor plaintiff performed labor ordinarily performed by farmers in this state in operating their farms? I think that is what was in the contemplation of the contracting parties. Farmers generally handle stock in connection with farming, raise, buy, and sell horses, cattle, and other animals, and when so engaged I think they are engaged in ordinary farm labor. But farmers do not generally operate as stock buyers. That is another occupation fairly well defined, generally understood, and not known as farming. Therefore labor in that occupation was not included in the contract under consideration. The evidence indicates quite satisfactorily that plaintiff was injured while engaged in the occupation generally known as stock buying and not known as farming. If plaintiff had been occupied in buying a horse for farm use, or stock hogs to feed, or any other buying usually performed by farmers as such and necessary in the usual operation of farms in this state, I think he would have been performing ordinary farm labor, as much so as if milking a cow or currying a horse.

In this case I do not think the labor was "farm labor." The intention of the contract is to insure the employees against injuries for which they may recover under the Workmen's Compensation Act. Extending the insurance to the employer while doing that which might be done by an employee covers his risk as fully as if he were an employee, and in considering the labor as ordinary or otherwise, we cannot consider whether or not it would ordinarily be committed to an employee, but must consider it from the standpoint of an employee to whom it had been committed. By insuring the employer the company covered his risk in performing the labor within the scope of his duties in the more responsible position. A

foreman may be as fully insured under the language used as the most menial employee. In this case the labor, while ordinary, was not farm labor because he was then occupied as a stock buyer. To illustrate, feeding hogs or repairing a harness in farm operation is ordinary farm labor, although such labor would not be farm labor at all, if done by a hog buyer's helper in the stockyards, or in the harness maker's repair shop. If plaintiff had been buying hogs for the farm, he would have been performing "farm labor," and I think such labor would have been "ordinary." I concur in the result.